IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ANAMARIA MORAN, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:21-cv-23679 |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| GC SERVICES LIMITED PARTNERSHIP, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT GC SERVICES LIMITED PARTNERSHIP'S AMENDED MOTION TO TRANSFER, OR IN THE ALTERNATIVE MOTION TO STAY, AND MEMORANDUM IN SUPPORT THEREOF**

Defendant GC Services Limited Partnership ("GC Services"), moves the Court to transfer this case to the Middle District of Florida under the "first-filed" rule where there is a prior pending class action against GC Services. The first-filed matter raises the same dispositive issue as raised in this case. In the alternative, GC Services moves the Court to stay this case pending the final outcome of the 11th Circuit Court of Appeals recently ordering that *Hunstein v. Preferred Collection & Managements Services, Inc*., be reheard en banc, and vacating the panel's opinion. No. 19-14434 (11th Cir. Nov. 17, 2021).[1] *Hunstein* involves questions both legal and factual that are nearly identical to these proceedings. Here, Plaintiff alleges that Defendant violated § 1692c(b) of the Fair Debt Collection Practices Act ("FDCPA") by communicating with a third party in connection with the collection of the debt. Doc. 1-2 at 3-4, ¶¶ 20-28. Further, Plaintiff's sole theory of liability, that Defendant employed the use of a third-party mail processor, is anchored by a direct citation to the 11th Circuit's decision in *Hunstein*. Doc. 1-2 at 4-5, ¶¶ 28, 35. In support of this Motion, GC Services states as follows:

---

[1] GC Services has attached two proposed Orders regarding the alternative relief it seeks in this Motion.

## STATEMENT OF FACTS

1. **Plaintiff's Complaint**

On July 25, 2021, Plaintiff Anamaria Moran ("Moran") filed a Complaint in the County Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, naming GC Services as Defendant. Doc. 1-2. GC Services timely removed the case to this Court on October 19, 2021. Doc. 1.

In her Complaint, Moran alleges that GC Services violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. by sending information about Plaintiff's alleged debt to a commercial mail house, which then "populated" the letter with the information provided by GC Services and sent Plaintiff the letter attached as Exhibit "A" to Moran's Complaint. Doc. 1-2 at 3-4, ¶¶ 20-28. Plaintiff cites *Hunstein v. Preferred Collection & Mgmt. Servs.,* Case No. 19-14434, 2021 U.S. App. LEXIS 11648 (11th Cir. Apr. 21, 2021) supporting her claim of an alleged violation. Doc. 1-2 at 4-5, ¶¶ 28, 35.

2. **Prior Pending Action – *Frangione* Lawsuit**

On May 17, 2021, a lawsuit containing similar allegations was filed against GC Services as a putative class action in the United States District Court for the Middle District of Florida, Tampa Division, in the case styled *Joseph Frangione v. GC Services Limited Partnership*, Case No. 8:21-cv-01193-MSS-AAS. A copy of the Class Action Complaint filed in the *Frangione* case is attached hereto as Exhibit 1.

In *Frangione,* the plaintiff alleges that GC Services violated the FDCPA by sending its collection letter to a third-party company, a "mail processor," that mailed the debt collection letter to the plaintiff. Exhibit 1 at pp. 6 and 9, ¶¶ 25-27 and 41-42.

The plaintiff in *Frangione,* like the plaintiff in this case, cites the *Hunstein* case as support that a violation occurred.  Exhibit 1 at p. 7, ¶ 32.  The class definition alleged by the plaintiff in *Frangione* is:

> All consumers in the United States about whose debt Defendant communicated information in connection with the collection of such debt to any third-party vendor(s) without the consumer's prior consent given directly to Defendant for the communications, on or after the date one year before the date of filing this Complaint.

Exhibit 1 at p. 3, ¶ 10.[2]

## ARGUMENTS AND AUTHORITIES

**1. This Case Should be Transferred to the Middle District of Florida Under the First-Filed Rule.**

"Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."  *Manuel v. Convergys Corp.,* 430 F.3d 1132, 1135 (11th Cir. 2005).  This presumption is followed in the Eleventh Circuit.  *Id. See also Merrill Lynch, Pierce, Fender & Smith, Inc. v. Haydu,* 675 F.2d 1169, 1174 (11th Cir. 1982) ("In absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case.").

The "first-filed" rule was developed as a doctrine of federal comity.  *Laskaris v. Fifth Third Bank,* 962 F. Supp. 2d 1297, 1298 (S.D. Fla. 2013). The rule is intended to avoid conflicting decisions, promote judicial efficiency, and avoid the needless expenditure of judicial resources. *Elliott v. Williams,* No. 20-81280-CIV-Altman/Brannon, 2021 WL 1998411 at *3 (S.D. Fla. May 19, 2021); *Lianne Yao v. Ulta Beauty Inc.,* No. 18-22213-CIV-Altonaga/Goodman, 2018 WL 4208324 (S.D. Fla. Aug. 8, 2018).

---

[2] The Court in *Frangione* has issued an order temporarily staying the case pending a decision by the Eleventh Circuit on a Petition for Rehearing or Rehearing *en banc* filed in the *Hunstein* case, that is relied upon in the Complaints of both Moran and Frangione as support for their claims that GC Services violated the FDCPA.

"When the rule applies, 'the proper course of action [is] for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed.'" *Laskaris,* 962 F. Supp. 2d at 1299, quoting *In re Checking Overdraft Litig.,* 859 F. Supp. 2d at 1324. The first-filed court may also decide whether to stay or consolidate the actions. *In re Checking Acct. Overdraft Litig.*, 859 F. Supp. 2d at 1325. Where the rule applies, "we require that the party objecting to jurisdiction in the first-filed forum carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule." *Manuel,* 430 F.3d at 1135.

In determining whether the first-filed rule applies, the courts consider "(1) the chronology of the two actions, (2) the similarity of parties, and (3) the similarity of the issues." *Laskaris,* 962 F. Supp. 2d at 1299; *Lianne Yao,* 2018 WL 4208324 at *1-3. Each of these factors favor application of the first-filed rule in this case.

First, there is no question that the *Frangione* case was filed first, over two months before this lawsuit was filed. *See* Ex. 1; Doc. 1-2. With respect to the second factor, the first-filed rule does not require that the parties and issues be identical, "it requires only that 'they are sufficiently similar or substantially overlap.'" *Elliott,* 2021 WL 1998411 at *4 (quoting *Vital Pharms., Inc. v. PhD Mktg., Inc.,* 2020 WL 6162794 at *1). Here, there is a similarity of parties because the plaintiff in the present case will undoubtedly be a member of the putative class alleged in *Frangione*. *Lianne Yao; supra.* Per the allegations in her Complaint, Plaintiff is a consumer whose debt Defendant allegedly communicated with a third-party vendor without her prior consent. *See* Ex. 1 at p. 3, ¶ 10; Doc. 1-2, 3 ¶¶ 20-28. The "first-filed" rule applies where two putative class actions are filed that involve similar issues, even where they are brought by different named plaintiffs against the same Defendant. *See, e.g. Laskaris, supra.* It also applies where the first-filed

action is brought as a class action and the second action is brought by an individual plaintiff that is not the named plaintiff in the first-filed action. *Lianne Yao; supra.* The fact that a class has not yet been certified in the first-filed action does not avoid the first-filed rule:

> "[F]or purposes of identity of the parties when applying the first-to-file rule, courts have looked at whether there is substantial overlap with the putative class even though the class has not yet been certified.... The reason is fairly straightforward: if the opposite rule were adopted, the first-to-file rule might never apply to overlapping class actions as long as they were filed by different plaintiffs. . ."

*Lianne Yo*, 2018 WL 4208324 at *3, quoting *Baatz v. Columbia Gas Transmission, LLC,* 814 F.3d 785, 790-791 (6th Cir. 2016). Further, both actions are against the same defendant, GC Services. This case is similar to *Cohen v. GC Services Limited Partnership*, Case No. 0:21-CV-61970-JEM, a case recently transferred by Judge Martinez from the Southern District of Florida to the Middle District of Florida under the first-filed rule due to the pending *Frangione* case. A copy of the Order Granting Motion to Transfer is attached hereto as Exhibit. 2. In *Cohen,* the plaintiff filed a class action suit against GC Services, claiming that GC Services violated the FDCPA by providing information to a third-party mail provider to prepare and send out debt collection letters. *Id.* In transferring the case, the Court determined that the parties in *Cohen* and *Frangione* were substantially the same because the defendant was the same in both cases and the proposed class in *Frangione* was broader and encompassed, like here, the proposed class in *Cohen.* Ex. 2 at 3.

With respect to the third factor, there is a similarity of issues because the core issue in both cases is whether providing information to a third-party mail provider to prepare and send out the debt collection letters violates 15 U.S.C. § 1692c(b) of the FDCPA. The fact that Moran asserts an additional claim under Florida law based on the same alleged facts does not save Moran's action from the first-filed rule. The fact that the second action raises an additional claim not present in the first-filed action does not evade the first-filed rule where the substance and basis of the claims

5

are the same. *Lianne Yao,* 2018 WL 4208324 at *2. The issues in the two cases need not be identical, but only need to substantially overlap. *Id.* There is no question that the substance and basis of the claims in the present case and in *Frangione* substantially overlap. The Court in *Cohen* addressed this as well and determined that because both actions involve the issue of whether providing information to a third-party mail provider to prepare and send out debt collection letters violates 16 U.S.C. § 1692c(b) of the FDCPA the issues in both cases substantially overlap even though the plaintiff in *Cohen* alleges additional violations of the statute. Ex. 2 at 3.

The first-filed rule applies and Moran cannot meet her burden of showing any compelling reasons that would avoid transfer of this action to the Middle District of Florida.

2. **In the Alternative, This Case Should be Stayed Pending the Eleventh Circuit Court of Appeals en banc rehearing of *Hunstein*.**

A trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This discretion is "incident to [a district court's] power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997); *see also Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (quotation marks omitted); *Robinson v. Section 23 Prop. Owner's Ass'n*, No. 2:12-cv-675-FtM-29CM, 2014 WL 2215757, at *6 (M.D. Fla. May 27, 2014) (citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997)).

A. **The Resolution of *Hunstein* is Controlling on This Case**

The 11th Circuit's final decision in *Hunstein* is likely dispositive of Plaintiff's claims here. In *Hunstein*, Plaintiff claimed Defendant violated § 1692c(b) of the FDCPA when it disclosed information pertaining to the plaintiff to a third-party mail vendor as part of its collection efforts.

6

*See* Complaint at ¶ 28, *Hunstein v. Preferred Management and Collections Servs., Inc.,* Case No. 8:19-cv-00983-TPB-TGW.[3] The district court granted the defendant's motion to dismiss, holding that the defendant did not violate the FDCPA because the communication with the vendor was not in connection with the collection of any debt. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.,* No. 8:19-CV-983-T-60SPF, 2019 WL 5578878, at *3 (M.D. Fla. Oct. 29, 2019).

On appeal, the 11th Circuit reversed the district court, holding that the communication did violate the FDCPA. More importantly, the 11th Circuit held that the plaintiff had suffered a concrete injury on the basis of only a statutory violation. *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341, 1348 (11th Cir. 2021). Although the plaintiff did not actually allege that he was harmed by the alleged violation, the 11th Circuit held that the mere violation was sufficient to confer standing. The defendant timely filed a Petition for Rehearing or Rehearing en banc, arguing that the 11th Circuit's standing analysis had contradicted Supreme Court precedent as well as 11th Circuit standing jurisprudence. *See* Petition for Rehearing en banc (with Panel Rehearing), *Hunstein v. Preferred Management and Collection Servs.* No. 19-14434, (11th Cir. May 26, 2021). On November 17, 2021, the Eleventh Circuit vacated the panel opinion and ordered that the case would be reheard en banc. No. 19-14434 (11th Cir. Nov. 17, 2021). As discussed, the 11th Circuit's final ruling will be mandatory authority for this Court to follow, and the near identical issues of law are still in question pending further action.

---

[3] *Compare* Compl. at ¶¶ 20-22
    20. "[…] Defendant transmitted Plaintiff's personal information to a third-party […]"
    21. "The personal information Defendant transmitted to the Third-party included […][1] Plaintiff's name; [2] Plaintiff's address; [3] the existence of the Consumer debt; [4] the amount of the consumer debt; [5] the creditor of the Consumer Debt' [6] that Plaintiff was the alleged debtor of the Consumer Debt; [7] information regarding the Subject Service; and [8] that Plaintiff did not pay the Consumer Debt and/or defaulted on the Consumer Debt (collectively, the "Transmitted Information").
    22. "The Third-Party, of whom Defendant transmitted Plaintiff's personal information to, compiled Plaintiff's personal information and prepared a letter that was to be sent to Plaintiff in an attempt to collect the Consumer Debt."

### B. The Supreme Court Implicitly Overruled *Hunstein*

In addition to the rehearing in *Hunstein*, the Supreme Court of the United States provided the 11th Circuit further incentive to rehear the *Hunstein* decision. The Supreme Court implicitly overruled the plaintiff's standing claims in *Hunstein*, in its decision in *TransUnion, LLC v. Ramirez*, No. 20-297 (Jun. 25, 2021). The question presented to the Supreme Court in *Ramirez* was whether class members who did not suffer a harm by a defendant's violation of the Fair Credit Reporting Act ("FCRA") had Article III standing. The Court held that even though the defendant had technically violated the FCRA, the statutory violation alone was not sufficient to establish standing without also showing that each member suffered a concrete harm. Ex. B. at 27.

In Footnote 6 of the majority opinion, the Court directly addressed the plaintiff's argument, identical to the theory of liability in *Hunstein* and in this case, that the mere processing of internal communications was a publication bearing a close relationship to a traditional defamation claim, which would support Article III standing. The Court rejected plaintiff's theory that the defendant "published" the class members' information to vendors that printed and sent the mailings that the class members received. Ex. B, at 19, n. 6. The Court further stated that disclosures to printing vendors are not necessarily recognized as actionable publications, and without which a plaintiff would not be able to establish Article III standing. *Id.* This exact argument was raised by the Appellee Defendant in the *Hunstein* Petition for Rehearing. *See* Ex. A., at 7-11. The Court's discussion regarding internal communications to third-party vendors is directly on point to *Hunstein* and the facts in this case. Thus, it is vital that this Court stay the matter while the 11th Circuit reconsiders its decision.

### C. Factors Weigh in Favor of Stay

In determining whether a stay is appropriate, courts examine several factors: (1) the interest of the plaintiff in proceeding expeditiously with the civil action as balanced against the prejudice to the plaintiff from delay; (2) the burden on defendant; (3) the convenience to the courts; (4) the interest of persons not parties to the civil litigation; and (5) the public interest. *Zanghi v. FreightCar Am., Inc.*, 38 F. Supp. 3d 631, 642 (W.D. Pa. 2014); *see also Freedom Sci., Inc. v. Enhanced Vision Sys.*, No. 8:11-CIV-1194-T-17-AEP, 2012 U.S. Dist. LEXIS 11410, at *2 (M.D. Fla. Jan. 31, 2012) (examining whether a stay will (1) unduly prejudice or tactically disadvantage the non-moving party; (2) simplify the issues and streamline the trial; and (3) reduce the burden of litigation on the parties and on the court).

Here, Plaintiff will not be prejudiced by a stay. This matter is early in its procedure, as Defendant has yet to respond to Plaintiff's Complaint and there has been no active discovery.

Additionally, the 11th Circuit's forthcoming decision will streamline any remaining factual questions to be determined in discovery or at trial, or alternatively, extinguish Plaintiff's claims entirely. Most importantly, the parties will suffer harm in the form of unnecessary litigation, fees, and expenses if a stay is not granted. Proceeding with this case while the dispositive issue before this Court is still in question, and most likely vitiated by the Supreme Court of the United States, would further burden the Court with unnecessary litigation that would fail to promote judicial economy. Thus, the Court is compelled to allow stay the proceedings here to allow the 11th Circuit to rehear *Hunstein* en banc in light of the Supreme Court's decision in *Ramirez*.

**WHEREFORE**, GC Services requests this Court to enter an Order granting Defendant's Motion.

9

## CONCLUSION

For the above reasons, this case should be transferred to the Middle District of Florida under the first-filed rule, or in the alternative, this case should be stayed pending final resolution of *Hunstein*.

## LOCAL RULE 7.1(A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

Respectfully submitted,

/s/ Adam H. Settle
Adam H. Settle, FL Bar No. 1026828
KAUFMAN DOLOWICH &
 VOLUCK, LLP
Four Penn Center
1600 John F. Kennedy Blvd., Suite 1030
Philadelphia, PA 19103
Telephone: (215) 501-7002
Facsimile: (215) 405-2973
Email: asettle@kdvlaw.com

**ATTORNEYS FOR DEFENDANT,
GC SERVICES LIMITED
PARTNERSHIP**

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2021, a true and correct copy of the foregoing Corporate Disclosure Statement was delivered via electronic filing on all counsel of record, and/or via first-class mail, postage prepaid, upon the following:

Jibrael S. Hindi, Esq.
Thomas J. Patti, Esq.
THE LAW OFFICES OF JIBRAEL S. HINDI
110 SE 6th Street, Ste. 1744
Fort Lauderdale, FL 33301
Telephone: 954-907-1136
Facsimile: 855-529-9540
Email: jibrael@jibraellaw.com
 tom@jibraellaw.com
***Counsel for Plaintiff***

/s/ Adam H. Settle
Adam H. Settle, FL Bar No. 1026828

4862-8155-4948, v. 1